UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| AARON PATTERSON, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) No. 11 C 8804 |
| | ) |
| UNITED STATES OF AMERICA, | ) Judge Rebecca R. Pallmeyer |
| | ) |
| Respondent. | ) |

## MEMORANDUM OPINION AND ORDER

Aaron Patterson was convicted of murder and spent many years on death row before he was pardoned by then-Governor George Ryan. A year after Patterson's release from the state penitentiary, Patterson was caught in a federal sting operation and charged with conspiracy to distribute heroin and marijuana, possession with intent to distribute heroin and marijuana, and illegal possession of a firearm. His case proceeded to trial, but the proceedings were repeatedly disrupted by outbursts on the part of Patterson and his then-attorney, Ms. Demitrus Evans. During the course of jury selection, Ms. Evans, visibly distressed by the court's pretrial rulings, abruptly left the courtroom, abandoning her client and the court. In the wake of the disturbance created by Ms. Evans's departure, an attorney who had previously represented Patterson, Tommy Brewer, offered to step in as lead counsel. The court appointed Mr. Brewer and a Federal Defender Panel attorney, Paul Camarena, to represent Patterson. After a short continuance, a jury was selected and the trial proceedings resumed. The jury convicted Patterson on all counts and he was sentenced to 360 months' imprisonment.

The trial proceedings are described in more detail in the court's rulings on motions filed during and after the trial, several of them now published in WESTLAW. *See, e.g., United States v. Patterson,* No. 04-CR-705-1, 2005 WL 1865979 (N.D. Ill. June 9, 2005) (granting in part and denying in part the government's motion to introduce certain "other acts" evidence); *United States v. Patterson,* No. 04-CR-705-1 , 2005 WL 1785327 (N.D. Ill. July 22, 2005)

(overruling Patterson's objection to appointment of attorney Brewer); *United States v. Patterson,* No. 04 CR 705-1, 2007 WL 1438658 (N. D. Ill. May 15, 2007) (denying motion for reconsideration of the denial of a new trial). In the end, the Seventh Circuit affirmed his conviction in an unpublished order. *United States v. Patterson*, No. 07–2974, 397 F. App'x 209 (7th Cir. Oct. 5, 2010).

Patterson now brings this motion for relief from his conviction and sentence pursuant to 28 U.S.C. § 2255. He argues that Brewer's representation was ineffective because (1) Brewer failed to raise an entrapment defense, (2) Brewer allegedly suffered from a conflict of interest based on his previous employment as an Assistant State's Attorney, (3) Brewer was purportedly unprepared for trial and inexperienced, and (4) Brewer failed to move for a mistrial on the basis of juror bias. As explained below, none of these claims entitle Patterson to relief. His petition [1] is denied, and the court declines to grant a Certificate of Appealability.

## **FACTS AND PROCEDURAL HISTORY**[1]

Patterson confessed to murder after being tortured at the hands of Chicago Police Detective Jon Burge and spent more than a decade on death row. He was ultimately pardoned by then-Governor George Ryan and freed from prison in 2003. *United States v. Patterson*, 397 F. App'x 209, 211 (7th Cir. 2010). Once released, Patterson became a vocal activist, pledging to expose corruption and police misconduct. He filed a civil suit against Burge and others he believed were involved in the conspiracy, including then-Cook County State's Attorney Richard Devine. *See generally Patterson v. Burge*, 328 F. Supp. 2d 878 (N.D. Ill. 2004). In 2004, however, with the help of a confidential informant, Mario Maldonado, a federal investigation

---

[1] The following facts are drawn largely from the Seventh Circuit's decision affirming this court's judgment of conviction on direct appeal. *See United States v. Patterson*, 397 F. App'x 209, 211 (7th Cir. 2010). The court also supplements the Seventh Circuit's recitation of facts with information regarding the status of Patterson's representation during his criminal proceedings. Facts regarding his representation are drawn from the court's detailed description in its memorandum addressing post-trial motions. *See United States v. Patterson*, No. 04-CR-705-1, 2007 WL 1438658 (N.D. Ill. May 15, 2007).

recorded Patterson participating in several drug and gun transactions. Patterson believes the investigation and criminal charges were retaliation by various public officials for his activism and lawsuit. *Patterson*, 397 F. App'x at 211.

Patterson and his co-defendant Mark Mannie were charged in a thirteen-count indictment with conspiracy to distribute heroin and marijuana, possession with intent to distribute heroin and marijuana, and illegal possession of a firearm. Patterson's defense theory was that he had been improperly targeted based on his advocacy against police misconduct. He claimed that he participated in the deals only because he was conducting a "reverse sting" that could expose further police misconduct. The court ruled before trial, however, that Patterson had insufficient evidence to support either a public authority or entrapment defense. (*See* May 20, 2005 Mem. Op. & Order [124], 8; May 23, 2005 Mem. Op. & Order [129]. 3–4.)

Beginning during the pretrial proceedings, Patterson had a tumultuous relationship with his attorneys. Demitrus Evans represented Patterson from his initial court appearance. Tommy Brewer also appeared on behalf of Patterson at all the preliminary proceedings, but did not formally file an appearance until December 30, 2004. *Patterson*, 2007 WL 1438658, at *1. Then just three weeks later, on January 27, 2005, he moved to withdraw, citing a breakdown in communications. The court granted Mr. Brewer's motion on January 27, 2005. *Id.*; (Jan. 27, 2005 Order [54].) The court originally scheduled the trial for February 2005, but Ms. Evans sought a continuance, which the court granted, rescheduling the trial for May 31, 2005. *Id.*; (Feb. 11, 2005 Order [67].) In April, Ms. Evans moved for the appointment of additional counsel; the court granted that motion as well, and appointed Federal Panel attorney Paul Camarena. (April 25, 2005 Order [99].) But defense counsel was not prepared to proceed by May 31, and the court again continued the trial to July 5, with jury selection set to begin on June 30, 2005. *Patterson*, 2007 WL 1438658 at *1–*2; (May 27, 2005 Order [134]).

On June 30, with jury selection about to begin, defense counsel moved for a third continuance, citing Patterson's need for mental health treatment and their own lack of

3

preparation. *Patterson*, 397 F. App'x at 211. The court denied the motion. It had already determined that Patterson was competent to stand trial (June 29, 2005 Mem. Op. & Order [262], 1), and reasoned that counsel's lack of preparation stemmed from delays caused by Patterson himself. *Patterson*, 397 F. App'x at 211; (July 1, 2005 Order [204].) Patterson refused to come to court the first day of jury selection, but the court had him brought by force so that it could confirm first-hand his intention to waive his appearance. *Id.* Dismayed by the court's refusal to further delay the trial, Patterson interrupted the proceedings to demand that his lawyers withdraw and insist he represented himself. *Id.* at 211–12. He loudly announced the home addresses of his lawyers and declared that he would dispatch protestors to their homes unless they withdrew from the case. *Id.* at 212.

The court refused to permit Patterson to represent himself *pro se*, noting concerns that Patterson would continue to disrupt the proceedings and introduce inadmissible evidence. (July 1, 2005 Order.) The court clarified that it might reconsider self-representation if Patterson showed he could control his behavior. Patterson, however, escalated the disruption, threatening to have his supporters "chain themselves to [counsel's] stairs, stand in front of his house, have a bullhorn, maybe bring a spotlight, you know and just kind of like rattle [counsel] to please get off my case and allow me to represent myself." *Patterson*, 397 F. App'x at 212. The court ordered Patterson removed from the courtroom. (June 30, 2005 Order [216].)

Patterson returned the second day of *voir dire*, July 1, but his lawyers complained that he was physically obstructing them from using counsel's table or their papers. Outside the presence of the potential jurors, the court discussed the issue with Patterson and his attorneys, but

> Patterson erupted, imploring his lawyers to 'get the fuck off my case,' and telling the court 'you ain't gonna legal lynch me.' Patterson resisted entreaties by the marshals to leave the courtroom, throwing himself on the ground. The marshals ultimately removed him by force, after which Evans, now exasperated, declared she was withdrawing from the case and stormed out of the courtroom.

4

Patterson, 397 F. App'x at 212. Though the potential jurors were outside the courtroom, the court excused them because many reported overhearing the commotion. Evans returned several hours later, only after the court issued a bench warrant for her arrest. *Patterson*, No. 04-CR-705-1, 2007 WL 1438658, at *2. Despite this, the court continued jury selection.

On July 8, after three days of jury selection, Ms. Evans again abruptly left the courtroom, without permission, after the court overruled one of her objections. *Patterson*, 397 F. App'x at 212. Tommy Brewer, who had previously represented Patterson in the pre-trial proceedings, had remained in the courtroom observing the trial. Mr. Brewer offered to step back into the case after Ms. Evan's departure, representing that with a few days for preparation, he would be ready to proceed. *Id.* The government offered to furnish Brewer with copies of enhanced tape recordings that they had produced since Brewer had withdrawn in January. *Id.*

Days later, after receiving assurances from Brewer and Evans that Patterson was willing to go forward with Brewer as lead counsel, the court permitted Brewer to enter his appearance, and the trial began. (July 11, 2005 Order [236].) During the trial, however, a juror identified "unsavory" individuals in the gallery, and another juror witnessed what some believed to be members of the gallery flashing gang signs with Mannie. *Patterson*, No. 04-CR-705-1, 2007 WL 1438658, at *4–*5. On July 21, the court conducted a *voir dire* of the jury in the presence of the attorneys for the defendants and the government. One juror, who had noticed the gang signs, expressed that she did not "want to be on this jury," because she did not want "people coming to [her] home in the middle of the night to kill [her]." *Id.* at *4–*5. This juror was dismissed. The remaining jurors assured the court that any feelings they had about the presence of persons in the gallery would not influence their ability to remain impartial.

The trial was again disrupted on July 25 while Mannie's counsel was cross-examining a government witness. Patterson "lashed out at his lawyers, accusing them of sabotaging the defense and demanding they withdraw. The incident escalated when Patterson physically assaulted Brewer and [attorney Camerena], tackling one while dragging down the other by his

5

necktie." *Patterson*, 397 F. App'x at 212–13. The court excused the jury and had Patterson removed from the courtroom and again conducted a *voir dire* to determine whether Patterson's violent outburst had biased the jurors. One juror equivocated and was excused, but the remaining jurors affirmed their ability to remain impartial. *Patterson*, No. 04-CR-705-1, 2007 WL 1438658 at *5 n.8.

The court successfully completed the trial and the jury convicted Patterson on all counts. *Patterson*, 397 F. App'x at 213. The court sentenced Patterson to 360 months imprisonment. He appealed his conviction and the Seventh Circuit affirmed in an unpublished order. *United States v. Patterson*, No. 07-2974, 397 Fed. App'x 209 (7th Cir. Oct. 5, 2010).

## DISCUSSION

Patterson now brings this motion for relief from his conviction and sentence pursuant to 28 U.S.C. § 2255. Relief under 28 U.S.C. § 2255 "is available only in extraordinary situations, such as an error of constitutional or jurisdictional magnitude or where a fundamental defect has occurred which results in a complete miscarriage of justice." *Blake v. United States*, 723 F.3d 870, 878–79 (7th Cir. 2013); 28 U.S.C. § 2255(a). Issues that were raised on direct appeal may not be reconsidered on a § 2255 motion, absent changed circumstances. *Varela v. United States*, 481 F.3d 932, 935 (7th Cir. 2007). The court is also barred from considering issues not raised on appeal, unless the petitioner demonstrates both cause and prejudice. *Massaro v. United States*, 538 U.S. 500, 504 (2003). A petitioner may, however, raise an ineffective assistance of counsel claim in a § 2255 petition regardless of "whether or not the petitioner could have raised the claim on direct appeal." *Id.*

Patterson asserts that his trial counsel, Tommy Brewer, was ineffective in four ways: (1) Brewer failed to raise an entrapment defense, (2) he had a conflict of interest, (3) he was

unprepared for trial and inexperienced, and (4) he failed to move for a mistrial on the basis of juror's bias.[2]  (Petition [1], hereinafter "Pet." at 6–8.)

When assessing a claim of ineffective assistance of trial counsel, the court will "strongly presume" that counsel has "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  *Burt v. Titlow*, 134 S. Ct. 10, 17 (2013) (citing *Strickland v. Washington*, 466 U.S. 668, 690 (1984)).  The burden to demonstrate a trial counsel's constitutional deficiencies rests with the petitioner, who must establish two elements: "that his counsel's performance fell below an objective standard of reasonableness, and that he was prejudiced as a result."  *Jones v. Butler*, 778 F.3d 575, 583 (7th Cir. 2015) (citing *Strickland*, 466 U.S. at 687–88).  To satisfy the second element, Petitioner must show that there is a reasonable probability that but for counsel's errors, the result of the proceedings would have been different.  *Id.*  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Strickland*, 466 U.S. at 694.  The court addresses each objection in turn.

**I.    Entrapment**

Patterson asserts that Brewer was ineffective for failing to request an entrapment defense after the confidential informant, Mario Maldonado, established the required factual predicate during his testimony.  (Addendum to Pet. [1 at 19], hereinafter "Addendum," 30.)  According to Patterson, Maldonado testified that he called Patterson repeatedly at the government's insistence, though Patterson was initially unreceptive, and stated further that Patterson only wanted "replicas" of guns.  (*Id.* at 30–31.)  Patterson's attorneys did make entrapment arguments on his behalf prior to trial (*see* Notice of Entrapment Defense [106]; Defendant's Motion to Reconsider . . . Defense of Entrapment [157]), but did not submit an affidavit in support of that defense.  (June 29, 2005 Order [181]).  He nevertheless contended on direct appeal that this court erred in refusing to permit him to present an entrapment defense

---

[2]    For convenience, the court has re-numbered and reorganized Patterson's allegations.

in response to Maldonado's testimony. The Seventh Circuit rejected that argument, observing that Patterson "never supported his 'reverse-sting' theory, not even with an affidavit." *Patterson*, 397 F. App'x at 214. Patterson has identified no changed circumstances that would permit the court to reconsider this argument now: "A collateral attack cannot be used to obtain a second opinion on an argument presented and decided earlier." *United States v. Flores*, 739 F.3d 337, 341 (7th Cir. 2014).

And, as the Seventh Circuit forecast, an ineffective-assistance challenge on this basis is a nonstarter. *Patterson*, 397 F. App'x. at 215 (claim that counsel was ineffective for "failing to request an entrapment instruction . . . is all but bound to fail . . ."). Generally, a decision not to present such a defense is a part of counsel's trial strategy, which is virtually unchallengeable. *See United States v. Hirschberg*, 988 F.2d 1509, 1513 (7th Cir. 1993) ("[W]hen defendants attack trial counsel's strategy choices, [the court] offer[s] enormous deference to those choices[.]"). Moreover, Brewer's decision not to request the defense was entirely prudent: When he stepped back in to represent Patterson, the court had already considered the evidence Patterson offered, and ruled that it was insufficient to support an entrapment defense. (Mem. Op. and Order [129], 3–4.) The Seventh Circuit agreed that Patterson offered no evidentiary basis to challenge this court's ruling, and further failed to establish "that the alleged inducement came at the direction of the government." *Patterson*, 397 F. App'x at 214. Patterson was not entitled to an entrapment defense, and his counsel was not ineffective for failing to make a doomed request.

Patterson attempts to resuscitate the entrapment defense in his petition by attaching an affidavit, several newspaper articles, and surveillance reports which he contends establishes his efforts to conduct a reverse sting. (*See* Exs. A–C, E–J, N to Pet. [1-1].) The newspaper articles confirm that Patterson was a vocal critic of Burge and police brutality. The surveillance report states that during one meeting with Maldonado, Patterson tipped his hat "as if it were a signal to counter surveillance." (Surveillance Report, Ex. G to Pet. [1-1], 2.) In his one-paragraph

8

affidavit, Patterson avers that in March 2004 a reporter told him about the federal sting operation, and in response, he "engaged in a reverse sting by employing listening devices and videos." (Patterson Aff., Ex. F to Pet. [1-1].) Those devices, he claims, were "illegally confiscated" from his mother's home during his arrest and therefore have never been produced. (*Id.*) Patterson appears to argue that Brewer was ineffective for failing to present this evidence to the jury, but nothing Patterson presents in his petition undermines the court's earlier analysis. First, the court was aware of the surveillance report (May 20, 2005 Mem. Op. & Order [124], 2), of Patterson's claim that he only wanted "replicas," and of Patterson's assertions that the reverse-sting was part of his larger efforts to uncover police corruption and misconduct. (*See* May 23, 2005 Mem. Op. & Order [129] at 3–4; Tr. Trans. at 217:17–218:19.) The court nevertheless denied Patterson's request to present an entrapment defense because the evidence did not establish that he was induced by "grave threats, by fraud . . . or . . . by extraordinary promises." (*See* May 23, 2005 Mem. Op. & Order at 3) (quoting *United States v. Santiago-Godinez*, 12 F.3d 722, 728 n.5 (7th Cir. 1993). As it was at trial, this court remains "unable to comprehend how Patterson's alleged purchase or sale of drugs from a government informant offers an opportunity to expose [police] corruption." (*Id.* at 4.) Moreover, even if Patterson could establish that he was only induced to participate in the crime because he was enticed by the prospect of a "reverse-sting," he has failed to address the second prong: "that the alleged inducement came at the direction of the government." *Patterson*, 397 F. App'x at 214. Any request for an entrapment defense would have been rejected, and Brewer was not ineffective for failing to make such a request.

## II. Conflict of Interest

It is well settled that "[c]riminal defendants are guaranteed effective assistance of counsel, and have the right to representation free from conflict of interest, at all stages of the proceedings against them." *Blake v. United States*, 723 F.3d 870, 880 (7th Cir. 2013). Patterson claims he was deprived of conflict-free counsel because Brewer had previously

9

worked as a prosecutor under Cook County State's Attorney Richard Devine. Patterson believes his criminal charges were brought in retaliation for a civil suit against Devine, in which Patterson alleged that Devine "was involved in the Burge conspiracy." (Addendum at 10–11.) Brewer failed to raise an entrapment defense in his criminal case, Patterson contends, because it would have inculpated Devine in the civil suit. (*Id.*)

Courts recognize both actual and potential conflicts of interest. "An actual conflict of interest exists when the defense attorney was required to make a choice advancing his own interests to the detriment of his client's interests." *United States v. Pergler*, 233 F.3d 1005, 1009 (7th Cir. 2000) (internal quotations omitted). In such a case, "[i]f there is any adverse effect on the attorney's performance, prejudice is presumed and the defendant's argument prevails." *Blake*, 723 F.3d at 880 (internal quotations omitted).

There was no actual conflict of interest that would support a presumption of prejudice. Brewer "was not actually conflicted in the sense of being forced to choose between himself and his client." *Freeman v. Chandler*, 645 F.3d 863, 869 (7th Cir. 2011). The most that Patterson alleges is that Brewer harbored some allegiance to his former supervisor Devine. That kind of personal goodwill is not the kind of interest that creates an actual conflict. *Compare Stoia v. United States,* 22 F.3d 766, 772 (7th Cir. 1994) (an actual conflict would exist where vigorous representation might lead to revelation of counsel's subornation of perjury in another case, and counsel's violation of a federal plea agreement); *United States v. Cancilla,* 725 F.2d 867, 870 (2nd Cir. 1984) (counsel was actually conflicted where he had been involved in the same criminal activity as the defendant); *Solina v. United States,* 709 F.2d 160, 164–65 (2nd Cir.1983) (an actual conflict existed where defense counsel's vigorous representation might have increased the likelihood of the revelation that counsel was not admitted to practice law), *with Freeman*, 645 F.3d at 869 (no actual conflict existed where defense counsel testified in petitioner's defense). *See also Schmanke v. United States*, 25 F.3d 1053, *2 (7th Cir. 1994) (unpublished) (no actual conflict existed where defense counsel had worked as an Assistant

United States Attorney during the investigation of defendant's criminal conduct). Brewer had no interest that precluded him from mounting a competent defense on behalf of Patterson

Where there is no actual conflict, but only a potential conflict, "a petitioner must establish that the conflict resulted in ineffective assistance according to the familiar and more demanding *Strickland* standard." *Blake*, 723 F.3d at 880. Patterson cannot, however, show that Brewer's representation fell below an objectively reasonable standard of care. The only error Patterson claims Brewer made as a result of his potential conflict is failing to raise an entrapment defense. But as discussed above, the decision not to raise an entrapment defense was a sound one and did not prejudice Patterson.

### III. Unprepared and Inexperienced

Next, Patterson claims that he was denied effective assistance of counsel because Brewer had only a few days to prepare for the trial and had limited experience with criminal drug trials. Patterson presented this argument on direct appeal, and the Seventh Circuit considered and rejected it. As the Seventh Circuit explained, Patterson's challenges on direct appeal focused on "the timing of the trial date, the status of his representation, and the preparedness of his appointed lawyers." *Patterson*, 397 F. App'x at 211. The Court of Appeals pointed out that when a defendant requires appointed counsel,

> a court fulfills its duty to such defendants by appointing an attorney who is free of conflicts and capable of conducting a competent defense. Patterson got that in Brewer. Having represented Patterson earlier in the proceedings, Brewer had a familiarity with the case that made him a natural choice to replace Evans.

*Id.* at 213; *see also United States v. Patterson*, No. 04 CR 705-1, 2007 WL 1438658, *14, 15 (N.D. Ill. May 15, 2007) (addressing Patterson's concerns about Attorney Brewer at length). Patterson is therefore precluded from raising general objections based on Brewer's preparedness or experience. *United States v. Flores*, 739 F.3d 337, 341 (7th Cir. 2014). Patterson does, however, assert that Brewer made specific errors opening the door to evidence of gang affiliation, complaints which were not explicitly considered by the Seventh Circuit.

Patterson asserts that Brewer asked Detective Bocardo "if he had any gang intelligence reports and Bocardo responded in the affirmative." (Pet. Mem. at 23 (citing Tr. at 1166).) During Brewer's cross-examination, Detective Bocardo also stated "[i]f you review the tapes you will hear Mr. Patterson proclaiming himself leader and pointing out his territory." (Pet. at 24 (citing Tr. at 1188).) Patterson also asserts that Brewer solicited testimony from Bocardo that Patterson "was a high ranking gang member." (*Id.* at 24 (citing Tr. at 1166, 1180).) According to Patterson, that testimony was introduced in violation of the court's rulings on the motions *in limine* and opened the door to "critically damaging evidence" that supported the government's theory that Patterson was a violent gang member. (*Id.* at 24.)

There is no evidence that Brewer disregarded or contradicted the court's earlier rulings. Contrary to Patterson's assertions, the court had ruled that evidence of gang affiliation was admissible for the limited purpose of establishing a Patterson's "ability to direct Mannie to pick up firearms, potentially exposing Mannie while insulating himself form criminal liability." (June 9, 2005 Mem. Op. & Order [149], 5.) Consistent with this ruling, Brewer repeatedly argued to exclude the government's evidence of gang affiliation for other purposes. (*See* Tr. 1218–19, 1228, 1246–47, 1251, 1550–53.) To the extent that Brewer's cross-examination opened the door to further evidence, it was the result of a strategic choice to elicit testimony regarding possible improper motives the Chicago Police Department may have had for investigating Patterson—motives that Patterson himself pressed his attorneys to explore. (*See e.g.*, Tr. at 1553–54.) The court will not second-guess counsel's trial strategy, absent extraordinary displays of incompetence not remotely present here. *See Hirschberg*, 988 F.2d at 1513. Nothing in Brewer's cross-examination strategy or vigorous objections to the government's "gang experts" fell below an objectively reasonable standard of care.

IV. **Juror bias**

Finally, Patterson urges that he is entitled to relief because Brewer "failed to move for a mistrial in light of obvious bias [sic] and racist jurors." (Pet. at 35.) He argues that the jury's

exposure to individuals in the gallery "flashing gang signs" impermissibly supported the government's theory that he was a violent gang member.[3] This claim does not entitle him to relief. The record does not support Patterson's assertion that Brewer committed any such error: After Patterson's violent outburst on July 25, Brewer did in fact move for a mistrial, arguing that

> this jury could not give Mr. Patterson a fair trial, given the remarks they made regarding people coming in and out and the gangs and violence and the other evidence that's about -- that's going to be presented by the government that has not been presented. It's difficult. I would even be willing to start up with another jury, Judge, but this jury we can't do anything with.

(Tr. at 2565:6–12.) The court proceeded to question each juror individually—for a second time—to confirm that each person was capable of remaining fair and unbiased, an approach which the Seventh Circuit explicitly endorsed, noting that it "would be hard-pressed to question the court's findings, grounded as they were in assurances from each juror during a mid-trial voir dire that he or she could decide the case fairly." *United States v. Patterson*, 397 F. App'x. at 214 (citing *United States v. Allen*, 605 F.3d 461, 464–65 (7th Cir. 2010).) Brewer advocated vigorously for his client in this context, and any failure to make additional motions for a mistrial did not prejudice Patterson.

## V. Cumulative Error

Patterson raises a claim of cumulative error that focuses on counsel's actions both at trial and sentencing. (Pet. Addendum at 18.) *See United States v. Allen*, 369 F.3d 842, 846 (7th Cir. 2001) ("Cumulative errors, while individually harmless, when taken together can

---

[3] Patterson asserts that his co-defendant Mannie "obtain[ed] a reversal on this issue" of juror bias from the gang signs, and had his counsel made a motion for a mistrial, he would have obtained similar relief. Defendant Mannie's conviction was remanded for a new trial, however, because of Patterson's own behavior. The Court of Appeals noted that while Mannie sat "idly at the sidelines, Patterson stole the show at their joint proceedings." *United States v. Mannie*, 509 F.3d 851, 853 (7th Cir. 2007). As the Seventh Circuit explained, it was "[t]he combination of what the jury was exposed to in this case—Patterson garbed in prison attire verbally assaulting his attorneys, a campaign of intimidation by members of the gallery, [and] a violent courtroom brawl," between Patterson and his attorneys—that prejudiced the jury against Mannie. *Id.* at 857. Having survived a competence challenge, Patterson cannot rely on his own behavior and conduct to establish any unfair prejudice.

prejudice a defendant as much as a single reversible error and violate a defendant's right to due process of law."). But that principle has no application here, where Petitioner cannot identify even a single error, much less multiple errors, that "so infested the jury's deliberation that they denied the petitioner a fundamentally fair trial." *See id.* (quoting *Alvarez v. Boyd*, 225 F.3d 820. 824 (7th Cir. 2000)). Petitioner must show that but for counsel's alleged multiple errors, the trial outcome probably would have been different. Absent a showing of even a single error, much less prejudice, he cannot do so, and this claim is denied. *See Alvarez*, 225 F.3d at 825.

## VI. Certificate of Appealability

The court denies a Certificate of Appealability on all claims. To receive a Certificate of Appealability, Patterson must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A "substantial showing" exists only where "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Resendez v. Knight*, 653 F.3d 445, 446 (7th Cir. 2011) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). The court's ruling is not one that jurists of reason would find debatable.

## **CONCLUSION**

The court denies Petitioner's petition for relief from his conviction and sentence [1] and declines to issue a Certificate of Appealability.

ENTER:

Dated: July 27, 2015

REBECCA R. PALLMEYER
United States District Judge